# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM HILL,<br>　　　　　　Petitioner,<br><br>　vs.<br><br>JOHN KERESTES (Warden, SCI Mahoney); THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,<br>　　　　　　Respondents. | )<br>)<br>)<br>) Civil Action No. 11-1113<br>) Magistrate Judge Maureen P. Kelly<br>)<br>)<br>)<br>) |

### **MEMORANDUM ORDER**

William Hill, ("Petitioner"), represented by counsel, has filed a Petition For Relief From a Conviction or Sentence By a Person in State Custody under 28 U.S.C. § 2254 (the "Petition"), seeking to challenge Petitioner's convictions for: 1) Aggravated Indecent Assault; 2) Endangering the Welfare of a Child; 3) Corruption of Minors; 4) Indecent Assault;  5) Rape and 6) Involuntary Deviate Sexual Intercourse.   Petitioner was sentenced to an aggregate term of incarceration of 17 to 55 years after being found guilty in a bench trial.  Petitioner now claims that his trial counsel was ineffective for failing to call character witnesses.   Because this claim of ineffectiveness was raised in the state courts and the state courts addressed the claim on the merits and because Petitioner has not shown that the state courts' disposition of this claim was contrary to or an unreasonable application of then-existing United States Supreme Court precedent, the Petition will be denied.  In the alternative, the Petition is time barred and should be denied on that ground as well.

### A.  FACTUAL AND PROCEDURAL HISTORY

Given that we write primarily for the parties who are well-acquainted with the facts of this case, we forego a lengthy recitation herein.  It is sufficient to note that, at the bench trial, the

victim, who was the daughter of the Petitioner's girlfriend, testified that from about the time when she was 11 years old and, for two years thereafter, Petitioner sexually abused her. While Petitioner took the stand in his own defense, the trial judge, sitting as finder of fact, found the victim's testimony credible and Petitioner's testimony not credible. Consequently, Petitioner was found guilty.

On November 21, 2005, Petitioner was sentenced. On December 14, 2005, Petitioner, through the same counsel that represents him now, filed a notice of appeal. On August 14, 2007, the Superior Court affirmed the conviction. Petitioner did not file a Petition for Allowance of Appeal.

Roughly five months later, on January 22, 2008, Petitioner filed a counseled Post Conviction Relief Act ("PCRA") Petition through the same counsel that currently represents him. ECF No. 4-4 at 1 to 8. The sole issue raised therein was: "Trial counsel was ineffective for not calling available character witnesses who would have testified to the good character of William Hill[.]" Id., at 1, ¶ 12. The PCRA Petition was assigned to the same judge who presided over Petitioner's bench trial. The PCRA Court denied relief. Petitioner, through counsel, then filed an appeal and on July 21, 2009, the Superior Court affirmed the denial of relief. On November 5, 2009, Petitioner, through counsel, filed a Petition for Permission to File a Petition for Allowance of Appeal Nunc Pro Tunc. ECF No. 4-8 at 4 to 6. On April 8, 2010, the Pennsylvania Supreme Court granted the Petition for Nunc Pro Tunc relief and directed that a Petition for Allowance of Appeal be filed within 30 days. ECF No. 4-8 at 7. Petitioner, through counsel, filed a Petition for Allowance of Appeal on May 4, 2010. ECF No. 4-8 at 11 to 23. The Pennsylvania Supreme Court denied the Petition on September 8, 2010. ECF No. 4-8 at 30.

Waiting for nearly one year after the Pennsylvania Supreme Court denied the Petition for

Allowance of Appeal, Petitioner initiated the current proceedings when his counsel filed the Petition (which is the pre-printed form petition provided by the Administrative Office of the United States Courts) on August 30, 2011. ECF No. 1. The Petition raised the following:

> INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO INTERVIEW AND CALL GOOD CHARACTER WITNESSES[.] [As supporting facts, Petitioner alleged:] TRIAL COUNSEL WAS PROVIDED WITH NAMES OF POTENTIAL GOOD CHARACTER WITNESSES AND A BRIEF SUMMARY OF WHAT THEY WOULD TESTIFY TO AND [Petitioner] TOLD TRIAL COUNSEL THAT HE WANTED THESE WITNESSES CALLED ON HIS BEHALF.

ECF No. 1 at 6.

> WILLIAM HILL PROVIDED NAMES OF GOOD CHARACTER WITNESSES THAT HE WANTED CALLED AT HIS TRIAL FOR RAPE AND OTHER SEX CRIMES AGAINST THE DAUGHTER OF HIS LIVE IN GIRLFRIEND TO TESTIFY THAT HIS REPUTATION IN THE COMMUNITY WAS ONE OF NON VIOLENCE AND PEACEFULNESS[.]

ECF No. 1 at 8.[1]

The Respondents filed an Answer, ECF No. 4, wherein they pointed out that the Petition was untimely filed as well as being meritless.

We note that in the pre-printed form, there is a space addressing the timeliness of the Petition and in response to the question regarding the timeliness of the Petition, Petitioner's counsel simply stated that "PETITION FOR ALLOCATUR WAS DENIED SEPTEMBER 7, 2010[.] PETITION IS TIMELY[.]" ECF No. 1 at 14, ¶ 18.

All of the parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 3 and 5.

---

[1] We note that on the pre-printed habeas petition form, there is a blank space for listing "Ground Two" and a separate blank space for listing the supporting facts for Ground Two. ECF No. 1 at 8. While Petitioner's counsel did not fill out the blank space for Ground Two, he did fill out the space for supporting facts for Ground Two. We take it that the supporting facts so listed in that space to be additional supporting facts for Ground One.

B.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed after its effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."  Id. at 404-05 (emphasis deleted).  The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The United States Court of Appeals for the Third Circuit has also

elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197. Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. Williams, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable. Matteo, 171 F.3d at 890.

AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

**C. DISCUSSION**

**1. The Petition Violates the One Year Statute of Limitations.**

Respondents pointed out in their Answer that this Petition is untimely under the AEDPA. As relevant here, AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction became final.[2] Specifically, AEDPA provides that:

---

[2] Although AEDPA provides three other potential starting points for the running of its one year limitations period, Petitioner has not argued for the application of any of those three other starting points and, indeed, from the record, none appear to be applicable.

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
>    (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, Petitioner's conviction became final on September 13, 2007, i.e., thirty days after August 14, 2007,[3] the day on which the Pennsylvania Superior Court affirmed his conviction where no Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court. Drawbaugh v. Beard, No. 3:10-CV-1929, 2011 WL 6960967, at *2 n.3 (M.D.Pa. Nov. 9, 2011) ("Drawbaugh's conviction became final 30 days after the decision of the Pennsylvania Superior Court since he did not petition the Pennsylvania Supreme Court for allocatur."), *report and recommendation adopted by*, 2012 WL 32815 (M.D.Pa. Jan. 6, 2012); Barclay v. Pennsylvania, Civ.A. No. 11–478, 2011 WL 5237318 at *3 (E.D. Pa. Sept. 21, 2011), *report and recommendation adopted by*, 2011 WL 5248135 (E.D.Pa. Nov. 3, 2011). See also Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Kapral v. United States, 166 F.3d 565, 575, 577 (3d Cir. 1999).

---

[3] Inexplicably, the Respondents assert that Petitioner's conviction became final on September 30, 2007 and not September 13, 2007. ECF No. 4 at 11. The Court assumes that this was a typographical error. We utilize the legally correct date of September 13, 2007. The 17 day difference in dates however makes no difference in the outcome of this case.

As provided by AEDPA, Petitioner would have had until September 13, 2008, in which to file his Petition. Petitioner did not file the present Petition until, August 30, 2011, which would mean that, absent any tolling, the Petition would be untimely. It is true that a properly filed post conviction or collateral petition, such as a PCRA Petition in Pennsylvania, that was filed and/or pending would toll the running of AEDPA's limitations period.[4] Petitioner filed his first and only PCRA Petition through his counsel on January 22, 2008. Hence, as of that date, the PCRA Petition was pending and the AEDPA statute of limitations did not run, *i.e.*, was tolled. From September 13, 2007 (the date of his conviction becoming final) until January 21, 2008, a total of 130 days of AEDPA's 365 day limit was consumed, leaving only 235 days remaining.

The PCRA Petition continued pending only until, at the latest, September 8, 2010, when the Pennsylvania Supreme Court denied Petitioner's Nunc Pro Tunc Petition for Allowance of Appeal. Hence, AEDPA's statute of limitations began to run again on September 9, 2010, when the PCRA Petition was no longer pending. From September 9, 2010, until August 30, 2011, the date on which Petitioner's counsel filed this Petition, a total of 355 days were consumed. Adding these 355 days to the 130 days already consumed means that Petition waited a total of 485 days from the date his conviction became final to the date he filed his Petition or 120 days beyond the 365 day AEDPA statute of limitations.[5]

---

[4] See 22 U.S.C. § 2244(d)(2); Bennet v. Artuz, 199 F.3d 116, 119-22 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000).

[5] This is the most generous interpretation of the facts for Petitioner, as an argument could be made that the time from August 21, 2009 (i.e., 30 days after the date the Superior Court affirmed the denial of PCRA relief) until November 5, 2009 (i.e., the date on which Petitioner filed his Petition for Nunc Pro Tunc relief), which is a total of 76 days, would count against the AEDPA statute of limitations, as arguably, no PCRA Petition was pending during that time. See, e.g., Jenkins v. Laurel, __ F.3d __, 2013 WL 150130 at *4, n.11 (3d Cir. Jan. 15, 2012) ("AEDPA's
(footnote continued. . .)

Absent any other tolling, the Petition is clearly time-barred.

It is true that the doctrine of equitable tolling applies to AEDPA's statute of limitations. Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998). However, a habeas petitioner seeking to invoke the doctrine of equitable tolling must establish two things: 1) the existence of "extraordinary circumstances" which prevented him from filing in a timely manner and 2) that he acted with reasonable diligence. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); Simmons v. Yukins, No. Civ. 01-CV-71287-DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001). Given that it is a habeas petitioner's burden to show entitlement to equitable tolling and Petitioner does not even argue for the existence of equitable tolling, instead, boldly asserting that the Petition is timely (by erroneously counting from the date that the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal in the PCRA proceedings rather than the date the conviction became final), we find equitable tolling does not apply. Accordingly, the Petition is untimely and will be denied as such.

### 2. The Petition is Meritless.

In the alternative, the Petition is meritless. The sole claim Petitioner raises in the Petition is a claim of ineffective assistance of trial counsel for failing to call character witnesses at his bench trial.

---

limitation period cannot be statutorily tolled between December 10, 2009, the expiration date for Jenkins to file a petition for allowance of appeal, and December 29, 2009, the date he perfected his pleading" which sought an extension of time in which to file the petition for allowance of appeal). Another argument could be made that the entire time of the pendency of the Petition for Nunc Pro Tunc Relief should also count against Petitioner. Douglas v. Horn, 359 F.3d 257 (3d Cir. 2004) (not granting statutory tolling for the pendency of a petition for allowance of appeal nunc pro tunc where the Pennsylvania Supreme Court denied the nunc pro tunc petition). However, because the Respondents did not argue that these time periods should be counted against Petitioner, ECF No. 4 at 12 (asserting that the PCRA petition was pending from January 22, 2008 until September 8, 2010) we do not count these time periods against Petitioner. If we did, the Petition would be even more untimely.

In disposing of this ineffective assistance claim, the state court relied upon the test announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).[6] This Pennsylvania standard for ineffective assistance of counsel has been found to be materially identical to the United States Supreme Court test enunciated in Strickland. Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that the Pierce standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Werts, 228 F.3d at 204. Because the Superior Court decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to United States Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing that the Superior Court's decision applying the Pierce standard is contrary to the standard announced in Strickland. Petitioner could argue the second sense of "contrary to," i.e., the Superior Court reached a different result from that of the United States Supreme Court on a set of materially indistinguishable facts.

However, Petitioner does not point to any United States Supreme Court decision, in existence at the time that the Superior Court rendered its decision in this case that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different

---

[6] The Superior Court cited directly to Pierce. ECF No. 4-7 at 28 to 29.

from the outcome reached by the Superior Court herein.  Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision.").  Accordingly, Petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus, it remains open to Petitioner to show that the Superior Court's decision was an unreasonable application of federal law.  Petitioner's counsel fails to even argue that the Superior Court's disposition of this claim was an unreasonable application of any United States Supreme Court precedent.  Hence, Petitioner has not carried his burden to show that the Superior Court's decision constituted an unreasonable application of federal law concerning ineffective assistance of counsel.  Nor has Petitioner contended that the State Courts' decision resulted in an unreasonable determination of the facts.

The Superior Court reasoned that Petitioner could not show prejudice stemming from the failure of his trial counsel to call the character witnesses because the trial court stated that, even if Petitioner's trial counsel had called such witnesses, the outcome of the case would not have been different. ECF No. 4-7 at 33 to 34.  The Superior Court reasoned that

> Further, even if we were to find that counsel was ineffective for any of the above-cited reasons [for failing to call the character witnesses], Appellant could not succeed on these claims as he utterly failed to show that but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.  The instant case was a non-jury trial.  In its 1925 opinion, the trial court, while acknowledging that the introduction of character testimony can provide reasonable doubt, clearly stated that the introduction of character testimony would not have changed its decision.  Trial Court Opinion filed 10/30/08 at 3.  The trial court specifically said:
>
> > . . . in these particular circumstances, the evidence of
> > [Appellant]'s guilt was simply too great for character testimony to

> have changed the verdict to an acquittal. The victim's testimony
> was credible and supported by the testimony of her stepmother,
> who had suspected that [the victim] had been sexually abused
> before she [i.e., the victim] revealed what [Appellant] had done. . .
> . Under these circumstances, it is clear that even had [Appellant]
> presented the testimony of all six (6) character witnesses at trial,
> the verdict would not have been different.

ECF No. 4-7 at 33. Having failed to even argue that the Superior Court's disposition of this claim of ineffectiveness was contrary to or an unreasonable application of then-existing United States Supreme Court precedent or an unreasonable determination of the facts, we find that Petitioner fails to carry his burden to show entitlement to relief. Even if he had so argued, we would not be convinced. The Superior Court's decision is not contrary to or an unreasonable application of United States Supreme Court precedent. Accordingly, the Petition should be dismissed as meritless.

Accordingly, because the Petition is untimely and/or meritless, the Petition is hereby dismissed.

Because jurists of reason would not find the foregoing debatable, a Certificate of Appealability is hereby denied.

BY THE COURT:

Date: January 22, 2013

s/Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM-ECF

William S. Hill
Gl-0009
SCI-Mahanoy
301 Morea Road
Frackville, PA 17932